IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| KETONEAID, INC., a Delaware Corporation,<br><br>          Plaintiff,<br><br>               v.<br><br>SUSPEND AGING L.L.C., a Puerto Rico Limited Liability Company, d/b/a ALTRD HEALTH LLC d/b/a ALTRD APE COMPANY, and IBOK IBOK, an individual,<br>          Defendant. | Civil No. 25-1234 (GMM) |

### OMNIBUS OPINION AND ORDER

Before the Court are three motions: a *Motion to Dismiss For Failure to State A Claim Upon Which Relief Can Be Granted* ("*Motion to Dismiss*"), (Docket No. 11), filed by Defendant Ibok Ibok ("Mr. Ibok"); a *Motion for Entry of Default Against Defendant Suspend Aging L.L.C.* ("*Motion for Default Judgment*"), (Docket No. 12), filed by Plaintiff KetoneAid, Inc. ("KetoneAid") as to Defendant Suspend Aging, L.L.C ("Suspend Aging"); and a second *Plaintiff's Motion Reiterating Request For Entry Of Default Against Defendant Suspend Aging LLC* ("*Second Motion for Default*"), (Docket No. 17).

For the reasons outlined below, the Court hereby **DENIES** Mr. Ibok's *Motion to Dismiss* and **GRANTS** Plaintiff's *Motion for Default Judgment* and *Second Motion for Default Judgment* as to Suspend Aging.

Civil No. 25-1234 (GMM)
Page – 2 –

## I.    FACTUAL AND PROCEDURAL HISTORY

KetoneAid filed its *Verified Complaint* before this Court on April 25, 2025, alleging patent infringement by Mr. Ibok and Suspend Aging (collectively, "Defendants"). (Docket No. 1). KetoneAid is a Virginia-based company that creates and sells ketone-based products, including beverages and hard alcohol alternatives called "Hard Ketones." (Id. ¶¶1, 21, 26). To protect its commercial interests, KetoneAid has patented numerous ketone compounds that the company uses in its products: one such compound, D-1,3-butanediol ("D-1,3 BDO") - also known as R-1,3-butanediol ("R-1,3 BDO") and hereinafter indistinctly referred to as "Active Ingredient" or "Ketohol" - is used in KetoneAid's hard alcohol alternative drinks to provide the buzz sensation similar to that of alcohol, yet purportedly without causing some of alcohol's negative side effects. (Id. ¶¶1, 25-28).

Filed on October 23, 2018, and issued on September 19, 2023, U.S. Patent Nos. 11,760,963 ("'963 Patent") protects the Ketohol compound under the title *Ketogenic Beer and Alcoholic Beverage Mixture Containing Non-Racemic Ethyl 3-Hydroxybutyrate and/or 1,3 Butanediol*. (Id. at 1, 7; Docket No. 16 at 2). Claim 1 of the '963 Patent reads as follows:

> 1. A beverage comprising water and at least 0.5 percent by volume D-1,3-butanediol and no, or substantially no, L-1, 3-butanediol, the beverage further optionally comprising one or more additives selected from the group

Civil No. 25-1234 (GMM)
Page – 3 –

      consisting of D ethyl 3-hydroxybutyrate; D beta
hydroxybutyrate salts; D beta hydroxybutyrate, D 1,3-
butanediol monoester; 3-hydroxy-, 3-ethoxy-1-methyl-3-
oxopropyl ester; D hydroxybutyric acid: ethanol: and
combinations thereof.

(Docket No. 1 at 9-10).

      In its *Verified Complaint*, KetoneAid alleges that Defendants
unlawfully utilized KetoneAid's Active Ingredient for monetary
gain. (Id. at 1). Suspend Aging is a for-profit limited liability
company based in Puerto Rico led by Mr. Ibok, a Puerto Rico
resident and President of Suspend Aging. (Id. ¶¶3, 4). KetoneAid
alleges that Defendants, without authorization, marketed "Fun
Ketones" – a hard alcohol alternative beverage that contain at
least 0.5% of KetoneAid's Active Ingredient and its proprietary,
patented technology - on www.funketones.com, a website owned and
operated by Suspend Aging. (Id. ¶¶29-32). As alleged, in preparing
to sell these products, KetoneAid asserts that Defendants engaged
in branding, product naming, trademark filings, website
development, and, according to videos on social media, had a soft
opening in November of 2024 where it offered samples of its product
and distributed it within the United States. (Id. ¶¶35-36). As to
Mr. Ibok, KetoneAid avers that Mr. Ibok filed, and is the owner
of, the trademark application for "Betterhol" – Defendants' term
for the same Active Ingredient contained in KetoneAid's products

Civil No. 25-1234 (GMM)
Page — 4 —

— and Fun Ketones, which Suspend Aging markets on its website. (Id. ¶50).

KetoneAid contends that Defendants' manufacturing, importation, use, distribution, offering for sale and/or sale of beverages containing the Active Ingredient constitutes patent infringement pursuant to 35 U.S.C. § 271 et seq. (Id. at 1, 9). Plaintiff asserts that it alerted both Mr. Ibok and Suspend Aging via a cease-and-desist letter on December 2, 2024 of their infringing activities, and that Defendants acknowledged receipt of said letter on December 17, 2024, yet the infringing behavior continued, promulgating this lawsuit. (Id. ¶43-44).

KetoneAid requests declaratory judgment, permanent injunctive relief, damages pursuant to 35 U.S.C. § 284, and attorneys' fees and costs pursuant to 35 U.S.C. § 285 against both Defendants, with monetary liability attaching to Mr. Ibok on behalf of Suspend Aging via a piercing of the corporate veil theory of corporate liability.[1] (Id. at 9-13).

---

[1] Plaintiff pleads "piercing the corporate veil" as a standalone claim. (Docket No. 1 at 12). However, "[p]iercing the corporate veil is not itself an independent . . . cause of action, 'but rather is a means of imposing liability on an underlying cause of action.'" Peacock v. Thomas, 516 U.S. 349, 354 (1996) (citing 1 Keating & O'Gradney, Fletcher Cyclopedia of Law of Private Corporations § 41, p. 603 (1990)). As patent infringement is the only underlying cause of action that can support federal jurisdiction, the Court at this juncture will limit its inquiry as to whether the elements of patent infringement are sufficiently pled to survive the Motion to Dismiss against Mr. Ibok.

Civil No. 25-1234 (GMM)
Page – 5 –

KetoneAid attempted several times to ordinarily serve Defendants but was unsuccessful. It thus moved for service of summons by publication, which this Court granted on June 3, 2025. (Docket No. 7). On June 12, 2025, KetoneAid served Suspend Aging by publication in The San Juan Daily Star. (Docket No. 9-1 at 6). Shortly thereafter, on June 16, 2025, Mr. Ibok was also served via publication in The San Juan Daily Star. (Docket No. 9-2 at 8). Following service, the *Verified Complaint* and *Summons*, as served, were sent to both Suspend Aging and Mr. Ibok by certified mail with receipt requested, addressed to their last known address, and by email. (Docket Nos. 8, 9-3). Certified mail was successful as to Suspend Aging but was returned to the sender as to Mr. Ibok. (Docket No. 9-3).

Nevertheless, Mr. Ibok filed pro se a *Motion to Dismiss* on July 15, 2025.[2] (Docket No. 11). Therein, Mr. Ibok contends that KetoneAid's *Verified Complaint* failed to advance any infringing act "beyond speculative assertions" and thereby fails under Federal Rule of Civil Procedure 12(b)(6). (Id. at 1). Mr. Ibok avers that he had not sold any Betterhol, nor the patented Ketohol compound. (Id. at 1). Indeed, Mr. Ibok claims that his version of

---

[2] Mr. Ibok responded pro se on his own behalf; he did not attempt to respond on behalf of Suspend Aging in his capacity as President. (Docket No. 11). Even if Mr. Ibok had attempted to make such representation, this Court would not credit it. *See* Rowland v. Cal. Men's Colony, 506 U.S. 194, 201–02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel.") (*citing* Osborn v. Bank of the U.S., 22 U.S. (9 Wheat.) 738, 829 (1824)).

Civil No. 25-1234 (GMM)
Page – 6 –

the Active Ingredient is "distinct in scope and purpose" from KetoneAid's Ketohol, in that it rests on a different proprietary combination of six ingredients. (Id.). Notwithstanding, Mr. Ibok also states that KetoneAid's patent over R-1,3 BDO "cannot preempt all uses of [R-1,3 BDO] . . . where the purpose, formulation, and mechanism of action differ substantively from" Plaintiff's '963 Patent. (Id.).

In response, Plaintiff filed *KetoneAid, Inc.'s Opposition to Ibok Ibok's Motion to Dismiss for Failure to State Claim* ("*Opposition*") to Mr. Ibok's *Motion to Dismiss* on July 29, 2025. (Docket No. 16). Therein, KetoneAid rejects the notion that its pleadings were speculative.[3] Plaintiff reiterates its allegations that Suspend Aging's Fun Ketones include at least 0.5% of the Active Ingredient and is used in the same commercial manner that Plaintiff's patent protects (Id. at 7-8). KetoneAid further argues that any differences that may exist between Mr. Ibok's Betterhol and KetoneAid's Ketohol are inapposite for two reasons. First, Plaintiff's allegations at the motion to dismiss stage are to be taken as true. Second, even if there are differences between the products, patent infringement only requires Fun Ketones to contain

---

[3] Plaintiff asserted arguments supporting its request for this Court to pierce the veil as to Mr. Ibok and to ultimately issue a permanent injunction as a remedy. (Docket No. 16 at 8-10). As aforementioned, the Court at this stage under Federal Rule 12(b)(6) will only respond to the arguments directly pertaining to the sufficiency of the cause of action pled in the *Verified Complaint*.

Civil No. 25-1234 (GMM)
Page – 7 –

the elements included in the claim at issue in the protected patent – any additional features that Fun Ketones may include are irrelevant. (Id. at 9-10). Finally, as to Mr. Ibok's argument that KetoneAid is improperly preempting all uses of the Active Ingredient, Plaintiff asserts it caricatures what ultimately is the protection of their statutory right to exclude Mr. Ibok from making or profiting off their patented technology. (Id. at 11-12).

To date, no licensed counsel on behalf of Suspend Aging has entered an appearance or filed a document in this matter. Accordingly, KetoneAid filed two motions for default judgment: first on July 16, 2025, and a renewed motion on October 3, 2025. (Docket Nos. 12, 17).

## II.    APPLICABLE LAW AND ANALYSIS

### A.    *Motion to Dismiss* as to Plaintiff KetoneAid

The Court will first address Mr. Ibok's *Motion to Dismiss*. Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move for the dismissal of a complaint when the pleading fails to state a claim upon which relief can be granted. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v.

Civil No. 25-1234 (GMM)
Page – 8 –

Twombly, 550 U.S. 544, 555-56 (2007) (internal quotations and citations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. Id.

To survive a Rule 12(b)(6) motion, KetoneAid must allege, on the face of its *Verified Complaint*, "sufficient facts to support a plausible claim for relief." Doe v. Stonehill Coll., Inc., 55 F.4th 302, 316 (1st Cir. 2022). In this context, plausible "means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels us to draw on our judicial experience and common sense." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (internal quotations omitted).

"A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the Court can reasonably infer that the defendant is liable for the misconduct alleged." Rodríguez-Wilson v. Banco Santander de P.R., 501 F. Supp. 3d 53, 56 (D.P.R. 2020); *see* Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). When evaluating such a motion, the Court "accept[s] as true all well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiffs." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009); *see* Fitzgerald v. Harris, 549 F.3d 46, 52 (1st Cir. 2008)); *see also* Miss. Pub.

Civil No. 25-1234 (GMM)
Page – 9 –

Emps.' Ret. Sys. v. Bos. Sci. Corp., 523 F.3d 75, 85 (1st Cir. 2008).

Under a Rule 12(b)(6) standard, the plaintiff must plausibly state a claim for patent infringement. According to the Patent Act, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).

At this stage, KetoneAid need not "plead infringement on an element-by-element basis." Bot M8 LLC v. Sony Corp. of America, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (quoting Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1350 (Fed. Cir. 2018)). Rather, "it is enough 'that a complaint place[s] the alleged infringer on notice of what activity . . . is being accused of infringement.'" Id. (quoting Lifetime Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1379 (Fed. Cir. 2017)) (internal quotations omitted).

At the same time, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." Id. at 1353. The level of detail required for a patent infringement claim to survive a motion to dismiss depends on multiple "factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." Id. For claims of literal

Civil No. 25-1234 (GMM)
Page – 10 –

infringement - where an accused product contains every single element of a patent's claim - Plaintiff is required to plead that "every limitation set forth in a claim . . . [is] found in an accused product, exactly." Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP, 616 F.3d 1249, 1253 (Fed. Cir. 2010) (*quoting* Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995)); Upjohn Co. v. Mova Pharm. Corp., 951 F. Supp. 333, 335 (D.P.R. 1997).

Dismissal at this stage would be appropriate "where the claim language expressly creates a limitation that is on its face at odds with the allegedly infringing technology or where there is no dispute as to the definition of a relevant term." Attabotics, Inc. v. URBX, Inc., 2022 WL 1989354, at *3 (D. Mass. June 6, 2022). In reviewing a pro se motion to dismiss, pro se litigant's motions are construed liberally; at the same time, the motion must still comply with procedural and substantive law. *See* Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

A patent infringement determination follows a two-step process. First, the Court must "determine[] the scope and meaning of the claims asserted." UTTO Inc. v. Metrotech Corp., 119 F.4th 984, 993 (Fed. Cir. 2024) (*quoting* Niazi Licensing Corp. v. St. Jude Med. S.C., Inc., 30 F.4th 1339, 1350 (Fed. Cir. 2022)). Second, the Court then must compare the "properly construed claims" "to the allegedly infringing device (for an apparatus claim) or

Civil No. 25-1234 (GMM)
Page – 11 –

allegedly infringing act (for a method claim)." Id. Claim
construction is a question of law determined by this Court;
comparison to the alleged product or act is a question of fact.
Omni Continuum LLC v. NKT Photonics Inc., No. 1:24-CV-11007-IT,
2024 WL 5125130, at *2 (D. Mass. Dec. 16, 2024) (citing Markman v.
Westview Instruments, Inc., 517 U.S. 370, 384 (1996)).

Upon review of the allegations as pled in the Verified
Complaint under these standards, and accepting as true all well-
pleaded facts, this Court finds that KetoneAid has plausibly set
forth a claim of patent infringement.

### 1.   Scope and Meaning of the Patent

The Court finds that step one is met. In the instant case,
the scope and meaning of Claim 1 of KetoneAid's '963 Patent over
the Active Ingredient is not in dispute. Mr. Ibok does not contest
KetoneAid's articulation or understanding of Claim 1 in his Motion
to Dismiss. See generally (Docket 11). Therefore, taking
KetoneAid's well-pled allegations as true, there are no disputes
as to Claim 1's scope and meaning.

To the extent Mr. Ibok's assertion that "Plaintiff's patent
claims cannot preempt all uses of R-1, 3-Butanediol" can be
understood to challenge Claim 1's scope, it is unavailing. Claim
1 of the '963 Patent provides a very particular description of the
specific compounds comprising at least 0.5% by volume in a water-

Civil No. 25-1234 (GMM)
Page – 12 –

based beverage that the patent protects. Under the '963 Patent, KetoneAid has "the right to exclude others from making, using, offering for sale, or selling [its specific] invention throughout the United States . . . ." 35 U.S.C. § 154(a)(1). Again, since Mr. Ibok does not contest KetoneAid's allegation that Betterhol contains the same exact elements as protected technology described in Claim 1, then the Court finds at this stage that Betterhol falls under the auspice of KetoneAid's patented technology. KetoneAid's subsequent efforts, then, to stymy Mr. Ibok's use of its Active Ingredient are precisely the type of preemption patents are meant to provide.

    2.  <u>Infringement of Patent</u>

    The Court also concludes that Mr. Ibok's conduct, as alleged, satisfies the second step necessary to demonstrate patent infringement under Section 271.

    KetoneAid alleges that Mr. Ibok's actions, as President of Suspend Aging, constitute patent infringement. Specifically, KetoneAid points to Mr. Ibok's "substantial preparatory steps toward the manufacture, importation, marketing, and/or sale of infringing products, including: website development, branding, trademark filings, product naming, and sample distribution" as violative conduct. (Docket. No. 1 at ¶36). KetoneAid also alleges

Civil No. 25-1234 (GMM)
Page – 13 –

that Mr. Ibok also holds the trademark personally for Betterhol
and Fun Ketones.

In attempts to fend off KetoneAid's infringement claims, Mr.
Ibok provides two counterarguments. First, Mr. Ibok argues that
since he has not "sold or commercially distributed any product
containing Betterhol," the patented Active Ingredient, he has not
infringed on KetoneAid's patent. (Docket No. 11 at 1). Second, Mr.
Ibok asserts that his Betterhol formula "consists of a proprietary
combination of six active ingredients for [purposes] distinct from
the scope and purpose of Plaintiff's patent claims." (Docket 11 at
1). Neither shields him from liability at this stage.

Mr. Ibok's first argument improperly narrows KetoneAid's
allegations. Even assuming arguendo that Mr. Ibok, as he asserts,
did not sell or commercially distribute the infringing product –
which the Court is not charged with assuming under a Rule 12(b)(6)
standard of review – Mr. Ibok's argument would still fail. This is
because Section 271 of the Patent Act prohibits not only the sale
of patented technology, but also its "make[]," "use[]," and "offers
to sell." 35 U.S.C. § 271(a).

KetoneAid's allegations of infringement extend further than
the sales Mr. Ibok contest. Indeed, the allegations encompass, to
wit: "manufacturing, importation, use, distribution, offering for
sale and/or sale of beverages containing the Active Ingredient" as
well as marketing, trademark filing, and more – none of which Mr.

Civil No. 25-1234 (GMM)
Page – 14 –

Ibok denies (Docket No. 1 at 1, 9) - and all of which fall squarely within the protection of Section 271 of the Patent Act. As such, at this stage, the Court credits KetoneAid's description of Mr. Ibok's infringing conduct.

As to Mr. Ibok's second argument, that his Betterhol formula is not equivalent to KetoneAid's Ketohol, it too falls short. Mr. Ibok does not disagree with KetoneAid's contention that the Betterhol in his Fun Ketones "does not contain, or substantially does not contain, L-1-3-butanediol" and contains every element and limitations as described in Claim 1. (Docket No. 1 at ¶¶38-42). Instead, Mr. Ibok claims that his Betterhol's has a proprietary combination of six ingredients purportedly in addition to the Active Ingredient, thereby making Betterhol's chemical composition distinct from KetoneAid's patented Ketohol. *See* (Docket No. 11). But it is well-settled law and "fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused [product]." A.B. Dick Co. v. Burroughs Corp., 713 F.2d 700, 703 (Fed. Cir. 1983). Thus, the addition of a proprietary combination of chemical ingredients to a compound that matches KetoneAid's patented technology does not allow Mr. Ibok to evade infringement.

Again, taking KetoneAid's well-pleaded allegations that every element in Claim 1 of the '963 Patent is found in Betterhol, alongside Mr. Ibok's lack of opposition, and considering Mr. Ibok's

Civil No. 25-1234 (GMM)
Page — 15 —

alleged make, use, and offer to sell the patented technology, this Court finds that KetoneAid has sufficiently pled a patent infringement claim under Section 271 that survives a motion to dismiss.

B.   *Motion for Default Judgment* and *Second Motion for Default Judgment* as to Suspend Aging

The Court now turns to KetoneAid's *Motion for Default Judgment* and *Second Motion for Default Judgment* against Suspend Aging. Federal Rule of Civil Procedure 55 establishes a two-step process for entry of a default judgment. First, "the clerk must enter" a notation of default "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Second, default judgment may be entered if the court (1) has "jurisdiction over the subject matter and parties," (2) "the allegations in the complaint state a specific, cognizable claim for relief," and (3) "the defaulted party had fair notice of its opportunity to object." In re The Home Rests., Inc., 285 F.3d 111, 114 (1st Cir. 2002).

All three prerequisites are met as to Suspend Aging. Default judgment is therefore appropriate.

1. Jurisdiction

The first factor to enter default judgment requires establishing the Court's subject-matter jurisdiction over the

Civil No. 25-1234 (GMM)
Page – 16 –

claims and personal jurisdiction over the parties. The Court has proper jurisdiction over this action.

First, the Court has subject-matter jurisdiction because KetoneAid's claim arises under the Patent Act, 35 U.S.C. § 271, a federal statute that creates federal question jurisdiction. 28 U.S.C. § 1331.

Second, the Court also has personal jurisdiction over Suspend Aging. Put simply, personal jurisdiction describes this Court's power "over a defendant. It is of two varieties, general and specific. General personal jurisdiction . . . is the power of a forum-based court . . . 'which may be asserted in connection with suits not directly founded on [that defendant's] forum-based conduct . . . .'" Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994) (quoting Donatelli v. Nat'l Hockey League, 893 F.2d 459, 462–63 (1st Cir. 1990)). In other words, "[g]eneral jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." Id. (internal citation omitted). For a corporation, "the paradigm forum for the exercise of general jurisdiction" is the corporation's principal place of business and site of incorporation, a place "in which the corporation is fairly regarded as at home." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011).

Civil No. 25-1234 (GMM)
Page – 17 –

"Specific personal jurisdiction, by contrast, is narrower in scope and may only be relied upon 'where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.'" Pritzker, 42 F.3d at 60 (quoting United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088-89 (1st Cir. 1992)). Consequently, specific jurisdiction "hinges on satisfaction of two requirements: [1] that the forum in which the federal district court sits has a long-arm statute that purports to grant jurisdiction over the defendant; and [2], that the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution." Id. at 60. As to the first prong, the First Circuit has repeatedly held that Puerto Rico's long-arm statute is "coextensive with the reach of the Due Process Clause." Carreras v. PMG Collins, LLC., 660 F.3d 549, 552 (1st Cir. 2011)

Here, the Court enjoys both general and specific personal jurisdiction over Suspend Aging. Suspend Aging is a Puerto Rico for-profit limited liability company registered in Puerto Rico with a principal place of business located in Dorado, Puerto Rico – hence domiciled in Puerto Rico and purposefully availing itself of the laws of this jurisdiction. As for its conduct, Suspend Aging was operating and conducting - through and by its infringing activities - systemic business operations in the jurisdiction of Puerto Rico. Thus, Suspend Aging's sustained forum-based contacts in Puerto Rico, both through domicile and conduct, render it "at

Civil No. 25-1234 (GMM)
Page – 18 –

home" in this jurisdiction and thereby subject to the *in personam* power of this Court.

    2. <u>Claims for Relief</u>

    The second step for granting default judgment involves assessing the merits of the claim for relief. KetoneAid has adequately alleged a violation under Section 271 of the Patent Act as to Defendant Suspend Aging.

    "A defaulting party 'is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated.'" <u>Ortiz-Gonzalez v. Fonovisa</u>, 277 F.3d 59, 62-63 (1st Cir. 2002) (*quoting* <u>Franco v. Selective Ins. Co.</u>, 184 F.3d 4, 9 n.3 (1st Cir. 1999)); *see* <u>Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.</u>, 771 F.2d 5, 13 (1st Cir. 1985) ("[T]here is no question that, default having been entered, each of [the plaintiff's] allegations of fact must be taken as true and each of its . . . claims must be considered established as a matter of law.").

    Courts then "may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." <u>Ramos-Falcon v. Autoridad de Energia Electrica</u>, 301 F.3d 1, 2 (1st Cir. 2002). Accordingly, KetoneAid's allegations, as aforementioned in Section II.A, apply with equal force to Suspend Aging.

Civil No. 25-1234 (GMM)
Page — 19 —

3. Fair Notice

The third and last factor to be accounted for prior to granting default judgment involves examining whether the party moving for default provided fair notice of the legal action to the defaulting party. Here, Suspend Aging was given notice at multiple stages. On December 2, 2024, KetoneAid sent Suspend Aging a cease-and-desist letter, putting the company on notice of potential litigation. Upon commencement of the instant matter, Suspend Aging was properly served by publication in The San Juan Daily Star by KetoneAid on June 12, 2025. (Docket No. 9-1 at 6). Suspend Aging has had since June 2025 to respond to the *Verified Complaint*, and since July 2025 to respond to the *Motion for Default Judgment*. (Docket Nos. 12, 17). Accordingly, Suspend Aging "had fair notice of [its] opportunity to object." In re The Home Rests., Inc., 285 F.3d at 114.

C.   Suspend Aging Shall be Enjoined from Using the Active Ingredient in its Products

Having concluded that default judgment is proper as to Suspend Aging, the Court now considers remedies. Under Federal Rule of Civil Procedure Rule 55(b), "if arriving at the judgment amount involves nothing more than arithmetic — the making of computations which may be figured from the record — a default judgment can be entered without a hearing of any kind." HMG Prop. Invs., Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 919 (1st Cir. 1988)

Civil No. 25-1234 (GMM)
Page – 20 –

(*citing* <u>Pope v. United States</u>, 323 U.S. 1, 12 (1944)). In absence
of this sum certain, "the party seeking the default judgment must
apply to the Court." <u>U.S. Dep't of Agric. Farm Serv. Agency v.</u>
<u>Carrasquillo Rodriguez</u>, Civil No. 11-1384 (ADC), 2012 WL 12996277,
at *1 (D.P.R. Aug. 1, 2012) (*citing* Fed. R. Civ. P. 55(b)(2)).

Specifically, pursuant to Rule 55(b)(2):

> If, in order to enable the court to enter judgment or to
> carry it into effect, it is necessary to take an account
> or to determine the amount of damages or to establish
> the truth of any averment by evidence or to make an
> investigation of any other matter, the court may conduct
> such hearings or order such references as it deems
> necessary and proper and shall accord a right of trial
> by jury to the parties when and as required by any
> statute of the United States.

Fed. R. Civ. P. 55(b)(2); *see also* <u>KPS & Assocs., Inc. v. Designs</u>
<u>By FMC, Inc.</u>, 318 F.3d 1, 18 (1st Cir. 2003); <u>Fox v. Se. Transp.</u>
<u>Inc.</u>, 25 F.3d 1037 (1st Cir. 1994).

In short, following an entry of default by the Court, "[a]
hearing may be required . . . to set damages when the amount is in
dispute or is not ascertainable from the pleadings." <u>In re The</u>
<u>Home Rests., Inc.</u>, 285 F.3d at 114; *see also* Fed. R. Civ. P.
55(b)(2); <u>Ortiz-Gonzalez</u>, 277 F.3d at 64; <u>HMG Property Invs.</u>, 847
F.2d at 919.

Here, Plaintiff requests in its *Verified Complaint*, and then
renews in its *Motion for Default Judgment* and *Second Motion for*
*Default Judgment*, the following remedies as to Suspend Aging:

Civil No. 25-1234 (GMM)
Page — 21 —

permanent injunctive relief, monetary damages, and attorneys'
costs and fees. (Docket Nos. 1, 12, 17).

The Court finds that the factors it must consider before
issuing permanent injunctive relief against Suspend Aging weigh in
favor of KetoneAid. These factors include the demonstration of
irreparable injury incurred by the Plaintiff, the available
remedies at law, the comparable hardships endured by the Parties,
and the public interest in the issuance of a permanent injunction.
*See* eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

1. Irreparable Injury and Lack of Available Remedies at Law

Irreparable injury "requires proof that a 'causal nexus
relates the alleged harm to the alleged infringement.'" Apple Inc.
v. Samsung Elecs. Co., 809 F.3d 633, 639 (Fed. Cir. 2015) ("Apple
III") (*quoting* Apple Inc. v. Samsung Elecs. Co., 695 F.3d 1370,
1374 (Fed. Cir. 2012) ("Apple I")). Since the Supreme Court's
decision in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006),
this analysis must rest not only on past infringement, which
historically would have been sufficient for a finding of
irreparable injury, but now the Court must also look to a showing
of future infringement. Id. at 391. Such a showing relies on the
"infringing feature driv[ing] consumer demand for the accused
product." Apple I, 695 F.3d at 1375. Evidence such as direct market
competition (as a result of the use of the infringing product)
"and loss of market share go directly to the degree of harm."

Civil No. 25-1234 (GMM)
Page – 22 –

Siemens Gamesa Renewable Energy A/S v. Gen. Elec. Co., 626 F. Supp. 3d 468, 472 (D. Mass. 2022) (*quoting* Robert Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142, 1152 (Fed. Cir. 2011)). In addition, courts consider the infringement's impact on a patentee's exclusive statutory rights, "brandname, [] reputation, good will, [and] future research and development opportunities." Id. (*quoting* MercExchange, L.L.C. v. eBay, Inc., 500 F. Supp. 2d 556, 570 (E.D. Va. 2007)); *see also* Douglas Dynamics, LLC v. Buyers Prod. Co., 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Exclusivity is closely related to the fundamental nature of patents as property rights. It is an intangible asset that is part of a company's reputation, and here, [patent holder's] exclusive right to make, use, and sell the patented inventions is under attack by [the] infringement.").

    This factor weighs in favor of KetoneAid. While this Court found above Suspend Aging infringed on KetoneAid's patent, past infringing activity sets only the foundation for this inquiry. In its pleadings, KetoneAid asserts that its "market share and product margins will be reduced if Defendant is allowed to continue with its unlawful, unauthorized and free-riding acts," which include "its significant investments in marketing [Fun Ketones, which contain KetoneAid's patented Ketohol] and development of alliances with brand ambassadors, which include doctors, health specialists, and other wellness personalities." (Docket No. 16 at 9). This harm, KetoneAid asserts, undermines the exclusivity of their patented

Civil No. 25-1234 (GMM)
Page – 23 –

technology, which has ongoing impact on their goodwill, reputation, and loss of market share, as their Hard Ketones will be forced to compete with Suspend Aging's Fun Ketones. *See* (id.)

The Court must accept KetoneAid's well-pled allegations as true and acknowledge that "a defaulting party 'is taken to have conceded the truth of the factual allegations in the complaint,'" Ortiz-Gonzalez, 277 F.3d at 62-63. Consequently, this Court determines that Suspend Aging's Fun Ketones compete with KetoneAid's Hard Ketones, and the continued sale of Fun Ketones would reduce KetoneAid's market share and future product margins. Thus, KetoneAid adequately demonstrates likelihood of continued infringing conduct in the future sufficient to establish irreparable injury.

    2. Alternative Available Remedies at Law

As to the second factor, this Court must consider whether "remedies available at law, such as monetary damages, are inadequate to compensate" the patentee for the harm suffered. eBay, 547 U.S. at 391. One way of demonstrating this requirement is by demonstrating that the "downstream" effects of the irreparable harm "could not be calculated to a reasonable certainty." Apple Inc. v. Samsung Elecs. Co., Ltd., 735 F.3d 1352, 1368 (Fed. Cir. 2013) ("Apple II").

Plainly, KetoneAid's alleged injuries — direct market competition, loss of goodwill with brand ambassadors and potential

Civil No. 25-1234 (GMM)
Page — 24 —

partners, reputational harm, and loss of brand control — are precisely the type of injuries that cannot be cured through the award of monetary damages. *See* Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 20 (1st Cir. 1996) ("By its very nature injury to goodwill and reputation is not easily measured or fully compensable in [monetary] damages."). As such, the Court finds that otherwise available legal monetary damages would be insufficient in remedying KetoneAid's suffered harm.

   3. Balance of Hardships

   The Court must next consider the hardship that will befall the nonmovant if the injunction issues alongside the hardship to the movant if the injunction is denied. *See* Metalcraft of Mayville, Inc. v. The Toro Co., 848 F.3d 1358, 1369 (Fed. Cir. 2017). Courts often look to the size of each parties' business and the diversity of their product line with the presumption that a larger and varied business can better weather some hardship. *See, e.g.*, Robert Bosch LLC, 659 F.3d at 1156.

   The balance of hardships falls harder on KetoneAid. As pled, both KetoneAid and Suspend Aging sell alternative drinks to alcohol that use the Active Ingredient. The Court cannot locate anywhere in the record what percentage of either KetoneAid's or Suspend Aging's respective businesses rely on the sales of products containing the patented technology. Yet even in the case that Suspend Aging is a smaller business than KetoneAid or if its

Civil No. 25-1234 (GMM)
Page – 25 –

primary product is Fun Ketones – as the name of its website implies – this wouldn't allow it to evade an injunction. Id. (*citing* Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1003 n. 12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.")). Indeed, forcing KetoneAid to continue competing against its own patented compound in the market is a substantial hardship in and of itself.

Consequently, this factor sways in favor of KetoneAid.

4. Public Interest

The final factor, where the public interest lies, also easily weighs in favor of KetoneAid. It is against the public interest to allow infringement that would "have the effect of inhibiting innovation and incentive." Douglas Dynamics, LLC, 717 F.3d at 1346. After all, it serves the public interest to prevent patentees, who rely on the strength of a patent's purported protections over their proprietary technology, from being watered down in the market by an unauthorized competitor profiting off the wrongful use of patented products.

In all, the balance of factors tilts away from Suspend Aging and toward KetoneAid. Thus, the latter's request for permanent injunctive relief is proper under the circumstances.

Civil No. 25-1234 (GMM)
Page – 26 –

### III. CONCLUSION

For the reasons stated herein the Court **DENIES** the Motion to Dismiss at Docket No. 11 and **GRANTS** the Motion for Default Judgment at Dockets No. 12 and 17. The Court will schedule a hearing to determine the actual monetary damages suffered by KetoneAid due to Suspend Aging's patent infringement in due course. *See* Fed. R. Civ. P. 55(b)(2).

Suspend Aging, its agents, servants, employees, representatives, and all others in active concert or participation with it, are hereby **ENJOINED** and restrained from using the Active Ingredient as protected in Claim 1 of the '963 Patent.


IT IS SO ORDERED.

In San Juan, Puerto Rico, on November 13, 2025.



                                   s/Gina R. Méndez-Miró
                                   GINA R. MÉNDEZ-MIRÓ
                                   UNITED STATES DISTRICT JUDGE