**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| KETONEAID, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SUSPEND AGING L.L.C., a Puerto Rico Limited Liability Company, d/b/a ALTRD HEALTH LLC d/b/a ALTRD APE COMPANY, and IBOK IBOK, an individual,<br>Defendants. | **Civil No. 25-1234 (GMM)** |

**OPINION AND ORDER**

Before the Court is *KetoneAid, Inc.'s Second Amended Motion for Summary Judgment of Infringement and No Invalidity of Claim 1 of U.S. Patent No. 11,760,963 and Memorandum of Law Thereof* ("*Motion for Summary Judgment*"), (Docket No. 40), filed by Plaintiff KetoneAid, Inc. ("KetoneAid") against Defendant Ibok Ibok ("Mr. Ibok"). Also pending are *Plaintiff's Motion to Disregard or Strike Defendant Ibok Ibok's Unauthorized Supplemental Opposition Under Federal Rule 12(f)* and *Defendant Ibok Ibok's Motion for Leave to File Supplemental Opposition Nunc Pro Tunc*. (Docket Nos. 56-57).

For the reasons outlined below, the Court hereby **GRANTS** KetoneAid's *Motion for Summary Judgment* and **DENIES as MOOT** the other pending motions.

## I. BACKGROUND

The Court incorporates by reference the factual and procedural background set forth in its prior *Omnibus Opinion and Order*. (Docket No. 18).

On November 13, 2025, the Court issued an *Omnibus Opinion and Order* denying the *Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted* filed by Mr. Ibok, (Docket No. 11), and granting two motions: the *Motion for Entry of Default Against Defendant Suspend Aging L.L.C.*, (Docket No. 12), and *Plaintiff's Motion Reiterating Request for Entry of Default Against Defendant Suspend Aging LLC* (Docket No. 17), both as to Defendant Suspend Aging, L.L.C. ("Suspend Aging"). (Docket No. 18). Accordingly, Suspend Aging, its agents, servants, employees, representatives, and all others in active concert or participation with it, were enjoined and restrained from using the Active Ingredient as protected in Claim 1 of the U.S. Patent No. 11,760,963 (the "'963 Patent"). Consequently, the Clerk of the Court entered default against Suspend Aging. (Docket No. 33).

On December 1, 2025, the Court set an evidentiary hearing to determine damages following this entry of default. (Docket No. 19). On December 23, 2025, KetoneAid filed *Plaintiff KetoneAid,*

*Inc.'s Motion to Cancel Evidentiary Hearing on Damages*. (Docket No. 26). Upon KetoneAid's express waiver of monetary and economic damages against both Defendants, (Docket No. 23), the evidentiary hearing was vacated and the monetary damages claims against both Defendants were ordered dismissed with prejudice. (Docket No. 27).

On March 20, 2026, KetoneAid filed the operative *Motion for Summary Judgment*. (Docket No. 40). Therein, KetoneAid argues that the undisputed facts demonstrate that Mr. Ibok "infringed Claim 1 of the '963 Patent, and that Suspend Aging functions as his alter ego through which the infringing acts were carried out." (Id. at 3). These facts, KetoneAid urges, warrant summary judgment to hold Mr. Ibok personally liable and subject to a permanent injunction. (Id.).

Mr. Ibok submitted a response on April 9, 2026 contesting liability and disputing facts broadly without citation to any evidence or documents submitted by KetoneAid. (Docket No. 48). Plaintiff filed a reply on April 20, 2026. (Docket No. 52).

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 56

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed R. Civ. P. 56.

An issue is genuine when it is dispositive; a fact is material it has the potential to affect the outcome of the suit. Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011). The movant bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The Court must view the record in the light most favorable to the non-movant and draw all reasonable inferences in their favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The entire record includes pleadings, depositions, and any other admissions on file. Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). Questions of credibility and fact-finding are reserved for a jury. Greenburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The Court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

Ultimately, summary judgment is inappropriate where "the evidence on record is sufficiently open-ended to permit a rational fact finder to resolve the issue in favor of either side." Gerald v. Univ. of P.R., 707 F.3d 7, 16 (1st Cir. 2013) (internal quotations omitted).

B. Loc. Civ. R. 56

Motions for summary judgment are also governed by Local Civil Rule 56. Loc. Civ. R. 56; *see also* López-Hernández v. Terumo P.R.

LLC, 64 F.4th 22, 26 (1st Cir. 2023). Local Rule 56 mandates that a motion for summary judgment "be supported by a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." L.Cv.R. 56(b). That rule also demands that the party opposing the movant's motion must submit "with its opposition a separate, short, and concise statement of material facts" which "shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Id. 56(c). "Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation . . . ." Id. If any fact is not supported by "a citation to the specific page or paragraph of identified record material supporting the assertion," the court may "disregard" the unsupported statement. Id. 56(e).

Where a supported fact is not properly controverted, it "shall be deemed admitted." Id.; Quintana-Dieppa v. Dep't of Army, 130 F.4th 1, 8 (1st Cir. 2025). The Court has "no independent duty to search or consider any part of the record not specifically referenced by the parties' separate statement of facts." L.Cv.R. 56(e). This is known as an "anti-ferret rule," which is "intended to protect the district court from perusing through the summary judgment record in search of disputed material facts and prevent

litigants from shifting that burden onto the court." López-Hernández, 64 F.4th at 26. Litigants ignore the anti-ferret rule at their peril. Rodríguez-Severino v. UTC Aerospace Sys., 52 F.4th 448, 458 (1st Cir. 2022).

In the end, the nonmoving party is required to demonstrate "through submissions of evidentiary quality that a trial worthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 108 (1st Cir. 2006).

## III. UNCONTESTED FACTS

Mr. Ibok did not comply with Local Rule 56. The Court finds no document before it that properly indicates Mr. Ibok's admission, denial, or qualification of each of the individual facts that were submitted by Defendants in support of their summary judgment motion. *See* L.Cv.R. 56(c). As such, facts that were not properly controverted are deemed admitted for the purpose of ruling on this motion.

The Court, accordingly, draws the following factual findings from the parties' admissions on the record and those statements of proposed facts submitted by the parties that comply with Local Civil Rule 56. CMI Cap. Mkt. Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008). After thorough review, the Court finds that the following material facts are not in genuine dispute:

1. The '963 Patent is titled "Ketogenic Beer and Alcoholic Beverage Mixture Containing Non-Racemic Ethyl 3-Hydroxybutyrate and/or 1,3

Butanediol," issued on September 19, 2023, from U.S. Patent Application No. 16/168,703, and filed October 23, 2018. (Docket Nos. 1 at 7 ¶ 25; 40-1 at 1 ¶ 1; 40-3).

2. KetoneAid is the owner by assignment of all right, title, and interest in the '963 Patent. (Docket Nos. 1 at 1 ¶ 1, 7 ¶ 25; 40-1 at 1-2 ¶ 2; 40-2).

3. Claim 1 of the '963 Patent recites, in relevant part:

> 1. A beverage comprising water and at least 0.5 percent by volume D1,3-butanediol and no, or substantially no, L-1,3-butanediol,[…]

(Docket Nos. 40-1 at 2 ¶ 3; 40-2).

4. The '963 Patent describes D-1,3-butanediol as a specific form of 1,3-butanediol relevant to the claimed invention. (Docket Nos. 40-1 at 2 ¶ 4; 40-2).

5. The products in controversy are beverages marketed under the "Fun Ketones" (the "Accused Product") brand and promoted on the website www.funketones.com. These beverages contain an R-1,3-butanediol-based ingredient that Mr. Ibok, individually and through Suspend Aging, calls "Betterhol." (Docket Nos. 40-1 at 2 ¶ 5; 40-2).

6. The Accused Product incorporates the patented formulation by providing a beverage that includes water and at least 0.5% by volume D-1,3-butanediol (also known as R-1,3-butanediol), with little or no L-1,3-butanediol. D-1,3-butanediol and R-1,3-butanediol are collectively referred to as the "Active Ingredient." (Docket Nos. 1 at 8 ¶¶ 29-32; 40-1 at 2 ¶ 6; 40-2).

7. Mr. Ibok describes Betterhol as a formulation built around R-1,3-butanediol, used in

beverages as an alternative to alcoholic drinks for cognitive and mood effects. (Docket Nos. 11 at 1 ¶¶ 1-4; 40-1 at 2-3 ¶ 7).

8. The Accused Product is a beverage that includes water and R-1,3- butanediol as an active ingredient. (Docket Nos. 11 at 1 ¶¶ 3-4; 40-1 at 3 ¶ 8).

9. D-1,3- butanediol and R-1,3-butanediol refer to the same specific form of 1,3-butanediol for purposes of this case and the ’963 Patent. (Docket Nos. 1 at 6 ¶¶ 21-24; 11 at 1 ¶¶ 3-4; 16 at 2-4; 40-1 at 2 ¶ 9).

10. Mr. Ibok, directly and/or through its employees or agents, and/or its customers, offer for sale the products “Fun Ketones”, the Accused Product, at least through its website: www.funketones.com. (Docket Nos. 40-1 at 3 ¶ 10; 40-2).

11. The Accused Product, “Fun Ketones”, are an alternative drink to alcohol that embodies the technology of the ’963 Patent. (Docket Nos. 40-1 at 3 ¶ 11; 40-2).

12. Mr. Ibok markets “Fun Ketones” as a drink that can provide the buzz sensation that alcohol consumption generates without alcohol and some alcohol side effects. (Docket Nos. 40-1 at 3 ¶ 12; 40-2).

13. Mr. Ibok markets the Active Ingredient in “Fun Ketones” as Betterhol. (Docket Nos. 40-1 at 4 ¶ 13; 40-2).

14. Like many other compounds, the Active Ingredient is identified by different names due to chemical nomenclature systems. (Docket Nos. 40-1 at 7 ¶ 32; 40-2).

15. The Active Ingredient is indistinctly known as D 1,3-butanediol and R-1,3- butanediol. (Docket Nos. 40-1 at 7 ¶ 33; 40-2).

16. D 1,3-butanediol and R-1,3 butanediol are the same compound, where the "D" in D 1,3-butanediol and the "R" in R-1,3-butanediol refer to different naming systems of the same compound. (Docket Nos. 40-1 at 7 ¶ 34; 40-2).

17. KetoneAid sells, among others, the products "Hard Ketones", a series of alternative drinks to alcohol that embody the technology of the '963 Patent. (Docket Nos. 40-1 at 7 ¶ 35; 40-2).

18. "Hard Ketones" are marketed as drinks that can provide the buzz sensation that alcohol consumption generates but without alcohol and without some alcohol side effects. (Docket Nos. 40-1 at 8 ¶ 36; 40-2).

19. KetoneAid markets the Active Ingredient in Hard Ketones using the brand Ketohol. (Docket Nos. 40-1 at 8 ¶ 37; 40-2).

20. Mr. Ibok has taken substantial preparatory steps toward the manufacture, importation, marketing, and/or sale of Accused Product, including: website development, branding, trademark filings, product naming, and sample distribution. (Docket Nos. 40-1 at 9 ¶ 42; 40-2).

21. Mr. Ibok's marketing videos on social media indicate that, as of November 2024, he had a soft opening within the United States where Mr. Ibok used the Accused Products by offering samples and promoting it to the assisting public, and to the general public through his social media. (Docket Nos. 40-1 at 9 ¶ 43; 40-2).

22. The Accused Product contains water and at least 0.5 percent by volume of the Active

Ingredient. (Docket Nos. 40-1 at 9 ¶ 44; 40-2).

23. The Accused Product contains no, or substantially no, L-1-3-butanediol. (Docket Nos. 40-1 at 9 ¶ 45; 40-2).

24. The Accused Product contains each element of at least one Claim of the ’963 Patent. (Docket Nos. 40-1 at 9 ¶ 46; 40-2).

25. On December 2, 2024, KetoneAid sent a cease-and-desist letter to Mr. Ibok putting it on notice of the ’963 Patent and of Mr. Ibok’s infringing conduct. (Docket Nos. 40-1 at 9 ¶ 47; 40-2).

26. On December 17, 2024, Mr. Ibok acknowledged receipt of the cease-and-desist letter, and confirmed the product does contain the Active Ingredient, but continued his infringing acts. (Docket Nos. 40-1 at 9-10 ¶ 48; 40-2).

27. Suspend Aging is undercapitalized and/or the company’s funds are intermingled with those of Mr. Ibok; Mr. Ibok is the sole shareholder, officer and director of the company. (Docket Nos. 40-1 at 10-11 ¶ 51; 40-2).

28. Suspend Aging lacks a Certificate of Good standing issued by the Puerto Rico Department of State. (Docket Nos. 40-1 at 11 ¶ 52; 40-2).

29. Based on the prosecution history of the ’963 Patent, the United States Patent and Trademark Office (“USPTO”) considered prior art references relating to formulations and uses of 1,3-butanediol during examination of the patent. (Docket Nos. 40-1 at 11 ¶ 53; 40-2).

30. Among the references considered by the USPTO were D’Agostino et al. (U.S. Patent Application Publication No. 2014/0350105 A1) (“D’Agostino”) and Clarke et al. (U.S. Patent

Application Publication No. 2015/0065571 A1) ("Clarke"). (Docket Nos. 40-1 at 11 ¶ 54; 40-2).

31. D'Agostino discloses compositions including 1,3-butanediol as part of a broader formulation that requires additional components, including medium-chain triglycerides. (Docket Nos. 40-1 at 11 ¶ 54; 40-2).

32. D'Agostino describes 1,3-butanediol in racemic form, comprising both D- and L-enantiomers. (Docket Nos. 40-1 at 12 ¶ 55; 40-2).

33. Clarke discloses R-1,3-butanediol as a starting material used to create a different compound, a ketone ester, in which the R-1,3-butanediol is chemically bound and does not remain in free form in the final composition. (Docket Nos. 40-1 at 12 ¶ 56; 40-2).

34. Prior art references were disclosed to the USPTO during examination of the '963 Patent and related applications. (Docket Nos. 40-1 at 12 ¶ 60; 40-2).

## IV. APPLICABLE LAW AND ANALYSIS

The assessment of a patent infringement claim is a two-step process which this Court assesses under Federal Circuit caselaw. In re Queen's Univ., 820 F.3d 1287, 1290 (Fed. Cir. 2016). First, the Court must construe the meaning and scope of the patent claim. Second, the Court must "compare the properly construed claim to the accused device to determine whether all of the claim limitations are present either literally or by a substantial

equivalent." Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1247 (Fed. Cir. 1998).

"[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996). When "the parties do not dispute any relevant facts regarding the accused product but disagree over which of the [proffered possible meanings of the claims is] the proper one, the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment." Athletic Alts., Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1578 (Fed. Cir. 1996).

Summary judgment on the issue of infringement is appropriate "when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused [product]." PC Connector Sols. LLC v. SmartDisk Corp., 406 F.3d 1359, 1364 (Fed. Cir. 2005). "[I]n every infringement analysis, the language of the claims, as well as the nature of the accused product, dictates whether an infringement has occurred." Fantasy Sports Props. v. Sportsline.com, Inc., 287 F.3d 1108, 1118 (Fed. Cir. 2002).

A. Claim Construction

The Court begins with the language of the asserted claim. Claim 1 of the '963 Patent reads as follows:

> 1. A beverage comprising water and at least 0.5 percent by volume D-1,3-butanediol and no, or substantially no, L-1, 3-butanediol, the beverage further optionally comprising one or more additives selected from the group consisting of D ethyl 3-hydroxybutyrate; D beta hydroxybutyrate salts; D beta hydroxybutyrate, D 1,3-butanediol monoester; 3-hydroxy-, 3-ethoxy-1-methyl-3-oxopropyl ester; D hydroxybutyric acid: ethanol: and combinations thereof.

(Docket No. 1 at 9-10).

As the Court previously resolved in its *Omnibus Opinion and Order*, (Docket No. 18), the scope and meaning of Claim 1 of KetoneAid's '963 Patent over the Active Ingredient is not in dispute. Mr. Ibok does not contest KetoneAid's articulation or understanding of Claim 1. (Docket Nos. 11, 48). In addition, the Court has already determined that Mr. Ibok's preemption argument failed as a matter of law. (Docket No. 18 at 11-12). To reiterate, Claim 1 of the '963 Patent provides a very particular description of the specific compounds comprising at least 0.5% by volume in a water-based beverage that the patent protects. Under the '963 Patent, KetoneAid has "the right to exclude others from making, using, offering for sale, or selling [its specific] invention throughout the United States . . . ." 35 U.S.C. § 154(a)(1). Again, since Mr. Ibok does not contest KetoneAid's allegation that Betterhol contains the same exact elements as protected technology

described in Claim 1, then it has been established that Betterhol falls under the auspice of KetoneAid's patented technology. KetoneAid's subsequent efforts to impede Mr. Ibok's use of its Active Ingredient are precisely the type of preemption patents are meant to provide.

Thus, there is no claim-construction dispute to resolve, and the plain language of Claim 1 is readily understandable and dispositive. The Court may proceed directly to the infringement analysis based on the plain and ordinary meaning of the claim terms. Because no construction beyond the claims' plain meaning is necessary here, the Court's next task is to compare the asserted claim to the accused product. Markman, 517 U.S. at 385.

B. Infringement

"In order 'to prove infringement, the patentee must show that an accused product embodies all limitations of the claim either literally or by the doctrine of equivalents.'" Millipore Corp. v. W.L. Gore & Assocs., Inc., 750 F. Supp. 2d 253, 271 (D. Mass. 2010) (*quoting* Amgen Inc. v. F. Hoffman-LA Roche Ltd., 580 F.3d 1340, 1374 (Fed. Cir. 2009) (alterations omitted)). Accordingly, the court may grant summary judgment of noninfringement only if, upon construction of the claims and with all reasonable factual inferences drawn in favor of the nonmovant, there is no genuine issue as to whether the accused product is encompassed by the patent claims either literally or under the doctrine of

equivalents. Novartis Corp. v. Ben Venue Labs., Inc., 271 F.3d 1043, 1046 (Fed. Cir. 2001).

The Court will focus its analysis on literal infringement, as it is the type of infringement KetoneAid brings.

1. Literal Infringement

To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly. Thus, "if any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." Becton, Dickinson and Co. v. Tyco Healthcare Grp., LP, 616 F.3d 1249, 1253 (Fed. Cir. 2010) (citation modified). This is a question of fact. Applied Med. Res. Corp. v. U.S. Surgical Corp., 448 F.3d 1324, 1332 (Fed. Cir. 2006). Therefore, the court must determine whether, after resolving all inferences in favor of the patentee, a reasonable jury could find literal infringement. Akzo Nobel Coatings, Inc. v. Dow Chem. Co., 811 F.3d 1334, 1341 (Fed. Cir. 2016).

Here, the undisputed evidence on record establishes that the Accused Product meets every element of Claim 1. As alleged in KetoneAid's *Complaint* — and not disputed by Mr. Ibok — the Accused Product (1) "compris[es] water and at least 0.5 percent by volume D-1,3-butanediol," and (2) contains "no, or substantially no, L-1,3-butanediol." (Docket Nos. 1 at 10; 40 at 8, 16). These are the only mandatory limitations of Claim 1. The remaining elements,

which relate to optional additives, are expressly designated as optional and therefore do not limit the scope of infringement. *See* Wenger Mfg., Inc. v. Coating Mach. Sys., Inc., 239 F.3d 1225, 1235 (Fed. Cir. 2001).

In addition, the undisputed record shows that Mr. Ibok has had actual knowledge of the ’963 Patent and his infringing conduct. On December 2, 2024, KetoneAid sent a cease-and-desist letter putting Mr. Ibok on notice of both the ’963 Patent and his unauthorized use of the patented technology. (Docket No. 40-1 at 9). On December 17, 2024, Mr. Ibok acknowledged receipt of the letter, confirmed that his product contains the patented active ingredient, and yet continued to engage in the infringing conduct. (Id.). These uncontested facts establish that Mr. Ibok’s infringement is knowing and willful.

Nor has Mr. Ibok raised any theory under 35 U.S.C. §§ 101, 102, 103, or 112 that would undermine this conclusion. Mr. Ibok has presented no evidence — be it expert, documentary, or testimonial — to challenge this finding under 35 U.S.C. § 101. Claim 1’s novelty is not attacked under 35 U.S.C. § 102. Nor is there any argument that the claimed invention would have been obvious to a person of ordinary skill in the art under 35 U.S.C. § 103, or that the claim lacks definiteness under 35 U.S.C. § 112.

Even if the Court liberally construed Mr. Ibok’s contentions as falling under one of these buckets, that too is unavailing.

Interpreting generously Mr. Ibok's averment that the Betterhol formula has a distinct purpose and formula that would somehow trigger a Section 102 or 103 theory, the Court is unpersuaded that this assertion is sufficient. KetoneAid provides two examples where it argued other products infringed on Claim 1 - the D'Agostino product, representing a different formulation, and the Clarke product, representing a different purpose and mechanism – and the USPTO examiner granted the patent to KetoneAid. Because Mr. Ibok has not meaningfully distinguished either reference, KetoneAid has demonstrated that its patent infringement claim prevails on this point as well. (Docket No. 40 at 17-18).

The undisputed facts demonstrate that the Accused Product includes each element recited in Claim 1. Thus, no reasonable jury could conclude that the Accused Product does not literally infringe Claim 1. Accordingly, the Court finds that Mr. Ibok has literally infringed Claim 1 of the '963 Patent.

2. Non-Invalidity

KetoneAid also moves for summary judgment as to non-invalidity of Claim 1 of the '963 Patent. Patents are presumed valid under 35 U.S.C. § 282. To overcome this presumption on summary judgment, Mr. Ibok must establish invalidity by clear and convincing evidence. *See* Norian Corp. v. Stryker Corp., 363 F.3d 1321, 1326 (Fed. Cir. 2004). To retain this presumption, KetoneAid need only demonstrate that Mr. Ibok failed to meet his evidentiary

burden of establishing invalidity. *See* Eli Lilly & Co. v. Barr Lab'ys, Inc., 251 F.3d 955, 962 (Fed. Cir. 2001).

Here, KetoneAid has adequately demonstrated that Mr. Ibok failed to present clear and convincing evidence concerning the invalidity of Claim 1 of the '963 Patent. Mr. Ibok was required to identify specific facts and evidence that could support a finding — by clear and convincing evidence — that Claim 1 is invalid under at least one of the recognized statutory provisions. Mr. Ibok has not proposed any competing construction, has not argued ambiguity, and has not identified any term requiring specialized interpretation. He has not identified any prior art and has again advanced no statutory invalidity theory under Sections 101, 102, 103, or 112. Without specifying prior art, claiming obviousness, or addressing written description, enablement, or definiteness, Mr. Ibok provides no legal or factual foundation on which a reasonable factfinder could determine invalidity. Moreover, Mr. Ibok has submitted no supporting evidence whatsoever, no documents, no testimony, no expert opinions, and no technical analyses. A patent challenger cannot rely on mere assertions or conclusory statements. Thus, summary judgment of non-invalidity is therefore appropriate.

C. Piercing the Corporate Veil

Lastly, KetoneAid asks this Court to pierce the corporate veil and hold Mr. Ibok, instead of Suspend Aging, directly liable

for patent infringement. To answer this question, the Court departs from Federal Circuit precedent on questions not unique to patent law and instead looks to the law of the First Circuit for guidance. Versata Software, Inc. v. Callidus Software, Inc., 780 F.3d 1134, 1136 (Fed. Cir. 2015).

As a general matter, the Federal Circuit holds that "[t]he 'corporate veil' shields a company's officers from personal liability for direct [patent] infringement that the officers commit in the name of the corporation, unless the corporation is the officers' 'alter ego.'" Wordtech Sys., Inc. v. Integrated Networks Sols., Inc., 609 F.3d 1308, 1313 (Fed. Cir. 2010). Determining whether corporate officers are personally liable for direct patent infringement therefore "requires invocation of those general principles relating to piercing the corporate veil." Id. The corporate veil doctrine "is not unique to patent law" and is accordingly governed by the law of the regional circuit. Wechsler v. Macke Int'l Trade, Inc., 486 F.3d 1286, 1295 (Fed. Cir. 2007).

Under Puerto Rico law, corporations are presumed to be legal entities separate from their officers, directors, and shareholders. P.R. Laws Ann. tit. 14, §§ 3501-08. For this reason, the corporate form is generally respected and "[a]s a rule, this shield will almost never be dismantled." Situ v. O'Neill, 124 F. Supp. 3d 34, 50 (D.P.R. 2015) (citation omitted). However, "[i]n certain circumstances, the corporate veil may be pierced and

individual liability imposed upon the individuals for which the corporate entity served merely as an alter ego." Nieto-Vicenty v. Valledor, 22 F. Supp. 3d 153, 162 (D.P.R. 2014) (citation modified). "[A] corporation is the alter ego or business conduit of its stockholders when there is such unity of interest and ownership that the personalities of the corporation and the stockholders . . . are intermingled and, as a result, the corporation actually is not a separate and independent entity." D.A.Co. v. Alturas Fl. Dev. Corp., 132 D.P.R. 905, 925 (P.R. 1993) (citation modified).

To that extent, Puerto Rico law holds that "the corporate veil may be pierced . . . where recognizing the corporate form would (1) sanction a fraud; (2) promote an injustice; (3) evade statutory obligations; (4) violate public policy; (5) result in inequity; or (6) cover up fraudulent or criminal activity." Nieto-Vicenty, 22 F. Supp. 3d at 162; *see also* Colón v. Blades, 914 F. Supp. 2d 181, 192 (D.P.R. 2011).

Several federal common law factors tend to be considered in tandem with the aforementioned state law factors to determine "whether there has been corporate misuse," to wit: "(1) undercapitalization; (2) nonpayment of dividends; (3) failure to observe corporate formalities; (4) absence of corporate records; (5) commingling of funds; and (6) use of corporate funds for non-corporate purposes." Nieto-Vicenty, 22 F. Supp. 3d at 162 (*citing*

Colón v. Blades, 757 F. Supp. 2d 107, 109 (D.P.R. 2010)). The burden of proof lies with the person asking the "court to disregard independent corporate structures by piercing a subsidiary's 'corporate veil'"; this burden is heavy. Velázquez v. P.D.I. Enters., Inc., 141 F. Supp. 2d 189, 193 (D.P.R. 1999).

In evaluating whether summary judgment is appropriate on KetoneAid's veil-piercing theory, the Court must apply these legal standards and determine whether a genuine dispute of material fact exists as to whether Mr. Ibok operated Suspend Aging as an alter ego, and whether adherence to the corporate form would result in injustice.

Here, KetoneAid has presented undisputed evidence that Mr. Ibok's actions, as President of Suspend Aging, not only constitute patent infringement, but that Mr. Ibok exercises complete domination and control over Suspend Aging, using the company as an alter ego to shield himself from personal liability. Specifically, the undisputed facts and evidence show that Suspend Aging has failed to comply with basic corporate formalities, including neglecting to pay required annual fees to the Puerto Rico Department of State since at least 2024, rendering it not in good standing as a corporation. (Docket Nos. 40-1 at 10 ¶ 50; 40-2). In addition, it is uncontested that Suspend Aging is undercapitalized and its funds are commingled with those of Mr. Ibok, who is the company's sole shareholder, officer, and

director. (Docket Nos. 40-1 at 10-11 ¶ 51; 40-2). This complete unity of interest and ownership demonstrates that Suspend Aging has no separate corporate existence independent of Mr. Ibok. Moreover, Mr. Ibok personally owns the trademark applications for "Fun Ketones" and "Betterhol," the brands under which the Accused Product is marketed. (Docket Nos. 40-1 at 9 ¶ 42; 40-2). This direct ownership of key intellectual property further confirms that Suspend Aging functions solely as an extension of Mr. Ibok's personal business activities.

Furthermore, it is also undisputed that Mr. Ibok has taken "substantial preparatory steps toward the manufacture, importation, marketing, and/or sale of infringing products, including: website development, branding, trademark filings, product naming, and sample distribution." (Docket No. 40-1 at 9 ¶ 42). He has also taken actions related to manufacturing, importation, use, distribution, offering for sale and/or sale of beverages containing the Active Ingredient, as well as marketing, and trademark filing. (Id. at 9 ¶ 43).

Thus, taken together, the undisputed facts and evidence on record satisfy the criteria for piercing the corporate veil under Puerto Rico law. Mr. Ibok's domination over Suspend Aging, the commingling of funds, undercapitalization, and direct ownership of intellectual property demonstrate that the corporate form has been used to shield him from liability and to perpetrate

infringing acts. Consequently, the Court finds that Suspend Aging is Mr. Ibok's alter ego and that Mr. Ibok is personally liable for patent infringement.

D. Remedy

KetoneAid has expressly waived any claim for compensatory or monetary damages against Mr. Ibok and Suspend Aging in this action and seeks only declaratory and injunctive relief to prevent ongoing and future infringement. (Docket No. 40 at 2 n.1). In consequence, the Court reiterates its conclusion in its previous *Opinion and Order* that the factors it must consider before issuing permanent injunctive relief against Mr. Ibok weigh in favor of KetoneAid. (Docket No. 18 at 21-25). These factors include the demonstration of irreparable injury incurred by the Plaintiff, the available remedies at law, the comparable hardships endured by the Parties, and the public interest in the issuance of a permanent injunction. *See* eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

This Court previously found that Suspend Aging infringed on KetoneAid's patent, and that Suspend Aging's Fun Ketones compete with KetoneAid's Hard Ketones, and the continued sale of Fun Ketones would reduce KetoneAid's market share and future product margins. (Docket No. 18 at 21-23). Now, the Court determines that Mr. Ibok also directly participated in infringing activity that caused Plaintiff harm, and therefore these findings apply with

equal force to Mr. Ibok. Thus, KetoneAid adequately demonstrates likelihood of continued infringing conduct in the future, amongst a balance of hardships and a consideration of the public interest, sufficient to establish a need for permanent injunctive relief.

## V. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the *Motion for Summary Judgment*. The Court concludes there are no genuine dispute of material facts and Claim 1 of U.S. Patent No. 11,760,963 is not invalid. Further, the Court finds that Mr. Ibok has infringed Claim 1 of the ’963 Patent and is personally liable for such infringement.

Consequently, it is **ORDERED** that Mr. Ibok is hereby **PERMANENTLY ENJOINED** from directly or indirectly: (a) making, using, offering for sale, selling, or importing into the United States any beverage comprising water and at least 0.5 percent by volume D 1,3-butanediol (also known as R-1,3-butanediol) and no, or substantially no, L-1,3-butanediol; or (b) otherwise infringing the ’963 Patent. Pursuant to Federal Rule of Civil Procedure 65(d)(2), this injunction binds Mr. Ibok and any other persons who are in active concert or participation with him and who receive actual notice of this *Opinion and Order* by personal service or otherwise.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on September 8, 2026.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE